**NOT FOR PUBLICATION**

```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

                                    :
ISABELL HAAGEN RAIA,                :   Civil Action No. 11-3374 (WJM)
                                    :
            Petitioner,             :
                                    :
       v.                           :
                                    :   MEMORANDUM OPINION
OSCAR AVILES et al.,                :
                                    :
            Respondents.            :
                                    :
```

**Martini**, District Judge:

     On March 2, 2011, a counseled § 2241 Petition for a Writ of Habeas Corpus ("Petition") was filed on behalf of Petitioner. See Docket Entry No. 1.  The Petition was filed in the United States District Court for the Southern District of New York ("SDNY"), even though Petitioner was and still is confined in New Jersey; moreover, the Petition opened with an assertion that Petitioner suffered a "severe restraint on [her] individual liberty"; that assertion was coupled with a cursory reference to Demore v. Kim, 538 U.S. 510 (2003), the case focusing on detention of pre-removal-order alien detainees. See id. at 1-4.

     While this Court is not in the position to guess, with any degree of certainty, all aspects that were considered by the SDNY upon its receipt and screening of the Petition, it appears that:

a.   the SDNY presumed that the Petition was challenging a pre-removal-order detention of the type examined in Demore and, correspondingly, the SDNY held a pre-trial conference;

b.  during the aforesaid pre-trial conference, the SDNY took notice of the fact that, while Petitioner was confined in New Jersey, the Petition was improperly venued with the SDNY.

Acting on this latter determination, the SDNY directed transfer of the Petition to this District, where Petitioner's action should have been brought in the first place.[1]

The SDNY's transfer order was received by the Clerk of this District on June 10, 2011, thus giving rise to the matter at bar; the resulting action was assigned to the undersigned on June 13, 2011.  See Docket Entry No. 7 and Docket Text of June 13, 2011.  In light of the SDNY's decision to hold a pre-trial conference (indicative of the SDNY's determination that the Petition, as drafted, could survive sua sponte dismissal), this Court issued a form order directing Respondents to answer Petitioner's challenges.  See Docket Entry No. 8.

However, having conducted a closer review of Petitioner's allegations, the Court finds it warranted to:

a.  vacate the order to answer;

---

[1] It appears that Petitioner's counsel ("MA Counsel") who filed the Petition with the SDNY: (a) is admitted in Massachusetts but not admitted to practice in this District; and (b) obtained a liaison counsel admitted to practice before the SDNY but, thus far, has not obtained a liaison counsel admitted to practice before in this District.  Therefore, for the purposes of the instant action, Petitioner is presumed proceeding pro se.

b.  dismiss Petitioner's allegations asserting civil rights challenges without prejudice to Petitioner's filing a civil complaint;

c.  dismiss Petitioner's challenges to her order of removal for lack of jurisdiction, pursuant to the REAL ID Act, construe this aspect of the Petition as Petitioner's application to the United States Court of Appeals for the Third Circuit ("Court of Appeals") and forward the Petition accordingly;

d.  dismiss Petitioner's § 2241 challenges to the fact of her current confinement without prejudice, as premature and/or not warranting habeas relief on the basis of Petitioner's claims as these claims are currently asserted;

e.  initiate a new § 2241 action for Petitioner and allow her an opportunity to file, in that new action, an amended petition stating Petitioner's ripened and potentially meritorious claims, if any; and

f.  detail to Petitioner the relevant legal regime in order to provide her with guidance for the purposes of her future actions, if any.

**I.   CIVIL RIGHTS CHALLENGES**

A substantial portion of the Petition is dedicated to discussions of Petitioner's conditions of confinement and the emotional distress Petitioner allegedly suffered as a result of her contacts with the immigration authorities; these allegations

are, seemingly, included in the Petition with an aim to assert that Petitioner should be released from confinement because her conditions of confinement are harsh and she feels emotionally unstable.  However, the harshness of an inmate's conditions of confinement or the inmate's emotional state cannot operate as a valid basis for the inmate's release obtained by means of habeas review; rather, these allegations should be raised by means of a civil complaint seeking injunctive and/or monetary relief.

Federal law provides two avenues of relief to inmates: a petition for habeas corpus and a civil rights complaint.  See Muhammad v. Close, 540 U.S. 749, 750 (2004).  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [while] requests for relief turning on circumstances of confinement [fall within the realm of] a § 1983 action."[2]  Id.  As § 1983 action applies only to state actions, it is not available to federal inmates;

---

[2] In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court analyzed the intersection of civil rights and habeas corpus.  In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate or speedier release.  See id. at 476.  The prisoners did not seek compensatory damages for the loss of their credits.  See id. at 494.  Assessing the prisoners' challenge, the Supreme Court held that a prisoner must bring a suit for equitable relief that, effectively, challenges "the fact or duration of confinement" as a habeas corpus petition.  See id. at 500.

the federal counterpart is an action under <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), alleging deprivation of a constitutional right. See <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801 (3d Cir. 2001) ("A <u>Bivens</u> action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law").

The Court of Appeals explained the distinction between the availability of civil rights relief and the availability of habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of habeas" - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

<u>Leamer v. Fauver</u>, 288 F.3d 532, 542 (3d Cir. 2002).[3]

---

[3] Unlike habeas actions, civil rights cases always require a filing fee, either as a prepayment or a series of installment payments. See 28 U.S.C. § 1915. While the filing fee for a habeas petition is $ 5.00, and inmates filing a habeas petition who are granted <u>in forma pauperis</u> status do not have to pay the filing fee. See <u>Santana v. United States</u>, 98 F. 3d 752 (3d Cir. 1996) (filing fee payment requirements of PLRA do not apply to in forma pauperis habeas corpus petitions and appeals). In contrast, the filing fee of a civil rights complaint is $ 350.00. Inmates filing a civil rights complaint who proceed <u>in forma pauperis</u> are required to pay the entire filing fee in monthly installments which are deducted from the prison account. See 28 U.S.C. § 1915(b). In addition, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for

Therefore, in the event Petitioner holds a <u>bona fide</u> belief that the conditions of her confinement or the actions of immigration officers, which allegedly caused Petitioner emotional distress, violated her constitutional rights, her remedy is to submit a civil complaint and accompany that complaint with Petitioner's application to prosecute her challenges <u>in forma pauperis</u> (or with Petitioner's filing fee of $350).[4]  In contrast, for the purposes of this Court's review of the habeas Petition at bar, Petitioner's civil rights challenges are subject to dismissal for this Court's lack of habeas jurisdiction over this line of claims.

## II.   CLAIMS BARRED BY THE REAL ID ACT

In addition to asserting Petitioner's civil rights claims, the Petition also challenges, to a great extent, the final order of removal entered against Petitioner.[5]

---

failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action <u>in forma pauperis</u> unless he or she is in imminent danger of serious physical injury. <u>See</u> 28 U.S.C. § 1915(g).  Thus, courts generally do not <u>sua sponte</u> re-characterize habeas pleadings into civil rights complaints.

   [4]   No statement made in this Memorandum Opinion shall be construed as expressing this Court's opinion as to substantive or procedural validity or invalidity of Petitioner's civil rights claims.

   [5]   The Petition elaborates on the positive developments that, allegedly, have taken place in Petitioner's marital relationship, on her husband's alleged need for Petitioner's assistance and companionship, on her in-laws willingness to provide the supplemental income she and her husband require in

However, on May 11, 2005, President George W. Bush signed into law the REAL ID Act of 2005.  See Pub. L. 109-13, Div. B, 119 Stat. 231 (May 11, 2005).

Section 106(a)(5) of the REAL ID Act of 2005 amends 8 U.S.C. § 1252 to provide that, "[n]otwithstanding any other provision of law (statutory or non[-]statutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision . . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e)."  See REAL ID Act of 2005, § 106(a)(5), to be codified at 8 U.S.C. § 1252(a)(5).

Therefore, Petitioner's challenges to her removal order should have been brought, at the first instance, to the United States Court of Appeals for the Third Circuit.  In contrast, for the purposes of the instant matter, Petitioner's challenges to her order of removal are subject to dismissal for lack of jurisdiction.

---

order not to fall in public care, etc.  However, all these matters have no relevance to the scope of review this Court can conduct pursuant to its Section 2241 mandate.  If Petitioner finds these aspects relevant to her immigration claims, she may bring them to the attention of the Court of Appeals and/or immigration authorities.  However, no statement made by the Court in this Memorandum Opinion or in the accompanying Order shall be construed as expressing this Court's opinion as to validity or invalidity of Petitioner's immigration challenges.

However, pursuant to 28 U.S.C. § 1631,

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Correspondingly, this Court -- out of abundance of caution and taking notice of substantial confusion plaguing the Petition -- finds it warranted to construe the aspect of the Petition challenging her removal order as her application to the Court of Appeals; this Court, therefore, will direct the Clerk to forward Petitioner's instant Petition accordingly.

### III. CHALLENGES TO THE FACT OF PETITIONER'S DETENTION

Finally, the Court takes notice of those allegations that suggest Petitioner's intent to challenge the fact of her current detention.

#### A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody,"; and (2) the custody could be "in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989). To the extent Petitioner's challenges the fact of her current confinement, this Court has § 2241 subject matter jurisdiction because Petitioner is detained within its jurisdiction and some of her claims seem to assert that her detention is not statutorily authorized and violates her constitutional rights.

### B. **Petitioner's Claims Are, At This Point, Without Merit**

#### 1. **Statutory Removal Period**

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. Detention during the removal period under Section 1231(a)(1)(A) is mandatory.[6]

#### 2. **Zadvydas Period**

While, during the 90-day "removal period," the alien must be detained, after the 90-day removal period, the government may further detain the alien or release him/her subject to conditions of release. See U.S.C. § 1231(a)(6). However, in Zadvydas v. Davis, 533 U.S. 678, 699 (2001), the Supreme Court held that aliens may be detained beyond the 90-day statutory period under § 1231(a)(6), although only for "a period reasonably necessary to

---

[6] In addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."

9

bring about that alien's removal from the United States." 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit indefinite detention").

Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Id. at 700-01. However, coining this "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, [if] the alien provides *good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future*.

Id. at 701 (emphasis supplied).

### 3.  **Zadvydas Considerations Not Triggered Thus Far**

Here, the Petition indicates that Petitioner is a German national who entered the United States in 1991 on a visitor's visa. See Docket Entry No. 1, at 4. The Petition does not

10

enlighten this Court as to the legal basis for Petitioner's presence in the United States for the following twelve years (i.e., between 1991 and 2003), but it informs the Court that, in 2003, Petitioner married a certain individual who was, seemingly, a United States citizen and who, apparently, proved to be a systemically imprisoned/re-imprisoned career criminal.[7]  See id. at 4 and 5.  The Petition also asserts that, right after the marriage, Petitioner swiftly became estranged from her husband but, many years later, re-established her relationship with him when she decided to visit her husband during one of his many incarcerations; the Petition states that Petitioner and her husband began living together in 2010 (when, apparently, her husband was released from his latest prison term), and her husband, eventually, developed a need in Petitioner's care and companionship.[8]  See id. at 5.

   Petitioner was taken in custody of immigration authorities on January 7, 2001, and -- five days later -- had her MA Counsel

---

   [7] The Petition indicates that Petitioner caught the eye of the immigration authorities when she processed the official paperwork associated with her marriage.  This statement strongly suggests that Petitioner was in the United States illegally for the period of twelve years preceding her marriage, that is, minus those initial few post-arrival months when Petitioner was in the United States on her visitor's visa.

   [8] According to the Petition, Petitioner's removal order became final in the meantime, specifically, it occurred on March 26, 2007: upon dismissal of her appeal by the Board of Immigration Appeals.

11

file an administrative application for release on bond. The instant Petition was filed with the SDNY less than two months later, i.e., on March 7, 2011.

However, the government's efforts to remove Petitioner were triggered only on January 7, 2001:[9] in that sense, Petitioner's

---

[9]

> [Indeed, there cannot] be ["]only one["] removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the [first] removal period begins when the removal order becomes final. . . . If there is another [triggering] event, there is another potential beginning date for the removal period. The only sensible reading of this provision is that [DHS] is required to effectuate the removal within 90 days of certain events, but [DHS] will have another 90 days if another one of the designated events occurs at a later date.

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS, 2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000). Here, it would be anomalous to presume that Petitioner's 90-day statutory removal period and 6-month Zadvydas-based presumptive period of removal expired within 90 days (or within 6 months) from the date when the order of removal became final, since Petitioner was not in custody of immigration authorities (and, hence, could not have been realistically removed) during those periods. The government is not expected to forfeit enforcement of a valid orders of removal in the event it cannot "catch" an alien and remove aliens adjudicated removed within 90 days (or 6 months) after adjudication completes. Finding otherwise would not only create an undue incentive for aliens adjudicated removed to hide from authorities for six months after the date when their removal orders become final, it would also reward those aliens

placement in custody operated as the superceding event from which both the 90-day period of removal and the 6-month Zadvydas-based presumptive period of removal began to run.

Therefore, it is hardly surprising that Petitioner's administrative application for release on bond (filed just five days after Petitioner was taken into custody) was left unanswered: during the first 90 days from the date of Petitioner being taken in custody, Petitioner's detention was mandatory under the statute.[10]

To add, at the time when Petitioner filed her instant Petition with the SDNY, her Zadvydas-based challenges were facially premature: simply because the government's presumptive six-month period to remove Petitioner had not expired since, at the time of Petitioner's filing of her Petition, the government used less than two months of its Zadvydas-based six-month period. Moreover, even as of now, i.e., when the Court is issuing this Memorandum Opinion and accompanying Order, the § 2241 aspect of the Petition is still facially premature because Petitioner's Zadvydas-based 6-month presumptive period of removal still had

---

who succeed at escaping the authorities for these six months with a de facto vacatur of wholly valid removal orders.

[10]  Analogously, even at the point in time when Petitioner filed her instant Petition with the SDNY and asserted that she should not have been detained, Petitioner was still under the same mandatory 90-day detention mandated by the statute: this is so because Petitioner filed her instant Petition just within two months from the date of her being taken into custody.

not expired: such expiration date would take place only on July 7, 2011, hence ripening Petitioner's Zadvydas-based habeas challenges.

Furthermore, even on and after July 7, 2011, it would not be enough for Petitioner to merely assert that she has been held in confinement for six months or longer: Petitioner would have to assert facts giving this Court a *good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future*. See Zadvydas v. Davis, 533 U.S. at 701. Here, the Petition does not assert any such reason.[11] The Court, however, cannot rule out the possibility that Petitioner might be able to state facts so indicating.

Therefore, to the extent Petitioner is challenging her current confinement, this Court will dismiss the Petition as premature or, in alternative, for failure to state a claim warranting habeas relief. Correspondingly, the Court will vacate its order directing Respondents' answer.

However, taking notice of the fact that Petitioner's Zadvydas-based six-month presumptive period of removal is to expire, literally, tomorrow, this Court finds it prudent to: (a)

---

[11] Indeed, Germany is not a country tormented by such plagues as civil war, lawlessness of the state, etc. Germany has been a cooperative partner of the United States in a multitude of matters, including immigration affairs. Therefore, this Court, on its own, fails to fancy any reason why there could be no significant likelihood of Petitioner's removal to Germany in the reasonably foreseeable future.

direct the Clerk to initiate a new and separate § 2241 habeas matter for Petitioner;[12] (b) allow Petitioner an opportunity to seek in forma pauperis status for the purposes of that new § 2241 matter;[13] and (c) provide Petitioner with an opportunity to file, in that new § 2241 matter, Petitioner's amended petition stating her facts, if any, that might indicate to the Court that there is no significant likelihood of Petitioner's removal to her country of origin, i.e., Germany, in the reasonably foreseeable future.[14]

---

[12]   Such new § 2241 matter will be administratively terminated.  The Court, however, stresses that administrative termination is *not* a dismissal on merits and, in the event Petitioner elects to file her amended petition and does so timely, this Court will direct the Clerk to reopen Petitioner's new § 2241 matter and will examine the amended petition on merits.

[13]   Section 1914, the filing fee statute, provides in relevant part that "[t]he clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $350 except that on application for a writ of habeas corpus the filing fee shall be $5."  The Supreme Court, however, observed that, "while [$5] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$500]." Smith v. Bennett, 365 U.S. 708, 712 (1961).  The Court, therefore, will direct the Clerk to serve Petitioner with a blank in forma pauperis form.  (The in forma pauperis form for inmates seeking to file a habeas pleading is *different* from the in forma pauperis form for inmates seeking to file a civil complaint, since the former need not be accompanied by the inmate's prison account statement for the six months preceding filing.  Rather, the in forma pauperis form for inmates seeking to file a habeas petition shall indicate the average amount on the inmate's prison account over the six months preceding filing.)

[14]   In other words, in the event Petitioner was cooperating with the United States immigration authorities in their efforts to remove her to Germany but, Petitioner's cooperation regardless, the United States immigration authorities face

In connection with the foregoing, the Court stresses that Petitioner may file a counseled amended petition or submit such petition pro se: the choice is entirely Petitioner's, and no statement made in this Memorandum Opinion shall be construed as expressing this Court's preference for receiving counseled or pro se future submissions from Petitioner.[15]

## IV.  CONCLUSION

For the foregoing reasons, the Petition will be dismissed. The Court's prior order directing Respondents to answer the Petition will be vacated.

Petitioner's civil rights challenges will be dismissed without prejudice to Petitioner's filing a civil complaint asserting such challenges.[16]

---

certain obstacles that render her removal to Germany in the reasonably foreseeable future significantly unlikely, Petitioner must detail these obstacles to the Court in her amended petition. All other aspects of Petitioner's position, e.g., her alleged developed affection for her husband, her husband's alleged need for her care and companionship, her allegedly harsh conditions of confinement, etc. have *no place* in Petitioner's amended petition: they should be omitted or saved for Petitioner's other actions.

[15] In the event Petitioner files a counseled petition, her counsel shall be admitted to practice in this District (or, in alternative, Petitioner's current MA Counsel may obtain a liaison counsel admitted to practice in this District and then move this Court for allowing Petitioner's MA Counsel to appear pro hac vice in Petitioner's new § 2241 matter, jointly with the local liaison counsel).

[16] The Court will direct the Clerk to serve Petitioner with a blank civil complaint form and a blank in forma pauperis form for incarcerated individuals seeking to file a civil complaint. In the event Petitioner elects to file such complaint and, in

16

Petitioner's challenges to her order of removal will be construed as Petitioner's application to the United States Court of Appeals for the Third Circuit and forwarded accordingly.

Petitioner's habeas challenges to the fact of her current confinement will be dismissed, without prejudice, as premature and/or for failure to assert a claim warranting habeas relief.

The Clerk will be directed to open a new and separate § 2241 habeas action for Petitioner.  That new and separate action will be administratively terminated subject to reopening in the event Petitioner decided to prosecute that new matter and timely files her amended petition detailing the facts in support of her position that there is no significant likelihood of her removal to Germany in the reasonably foreseeable future.  In the event Petitioner timely files such amended petition in her new § 2241 action (and submits, in conjunction with her filing of that amended petition, either her filing fee of $5.00 or her in forma

---

conjunction with that filing, seek in forma pauperis status, Petitioner must complete the in forma pauperis application and include, in addition, Petitioner's prison account statement for the six months preceding filing.  The Court stresses that, in the event Petitioner is granted in forma pauperis status in connection with her filing of civil complaint, then the Court would be required to assess the $350.00 filing fee against Petitioner and collect the fee by directing the agency having custody of her to deduct installment payments from her prison account equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00.  See 28 U.S.C. § 1915(b).  Such collection will be conducted regardless of the outcome of Petitioner's civil rights action.

pauperis application), the Court will direct reopening of this new § 2241 matter and will address the merits of Petitioner's amended petition.

Petitioner will be allowed ample time to prepare such amended petition on her own or, in the event Petitioner elects to submit a counseled amended petition, Petitioner will be allowed ample time to select counsel admitted in this District or to have her MA Counsel: (a) find a suitable liaison counsel admitted in this District; and (b) move this Court for pro hac vice appearance.[17]

An appropriate Order accompanies this Memorandum Opinion.

s/William J. Martini

**WILLIAM J. MARTINI**
**United States District Judge**

Dated: July 6, 2011

---

[17] While the courts construe pro se pleadings liberally and with a measure of tolerance, see Haines v. Kerner, 404 U.S. 519, 520 (1972), counseled pleadings are held to higher standards. This Court, therefore, stresses that -- in the event Petitioner files a counseled amended petition -- this Court expects such amended petition to be a document *carefully drafted, well-thought-through and free of factual allegations and legal arguments having no relevance to this Court's § 2241 mandate.*